UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP NICKENS,

                Petitioner,

- against -           **MEMORANDUM OPINION AND ORDER**

SUPERINTENDENT RONALD W.
MOSCICKI, Lakeview Correctional Facility,     09 Civ. 03097 (PGG)

                Respondent.

PAUL G. GARDEPHE, U.S.D.J.:

       Philip Nickens ("Petitioner" or "Nickens") brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his resentencing in Supreme Court for the State of New York, New York County. Petitioner contends that the resentencing violated his rights under the Double Jeopardy Clause because it increased a previous sentence in which he had a legitimate expectation of finality. (Pet. Br. 9) Petitioner also contends that he was denied effective assistance of trial counsel because his lawyer did not raise the double jeopardy issue before the trial court. (Am. Pet. at 6, 8) For the reasons stated below, Nickens' petition will be denied.

## BACKGROUND

       On January 26, 1990, Philip Nickens and two accomplices, Tyrone Crudup and Tracy Lang, stole crack cocaine from the occupants of an apartment at 557 West 174th Street in Manhattan. (Steward Decl., Ex. A at 11; Resp. Br. at 2; Pet. Br. at 2) In the course of the robbery, Tyrone Crudup shot and killed an occupant of the apartment. (Resp. Br. at 2) Petitioner was the lookout during the robbery, and later used the stolen drugs. (Ex. A at 12; Resp. Br. at 2; Pet. Br. at 4)

In 2005, Petitioner was charged in New York Supreme Court with second degree murder in connection with the 1990 robbery and murder. (Ex. A at 5; Ex. E at 2) On January 18, 2006, Petitioner was charged with robbery in the first degree, arising out of the same incident. (Ex. D at 2; Ex. E at 2)

When first charged in 2005 with the 1990 robbery and murder, Petitioner was serving a sentence for two unrelated first-degree robbery convictions. Pursuant to October 19, 1990 sentences imposed in connection with those convictions, Petitioner had a conditional release date of February 20, 2006, and a maximum expiration date of February 20, 2014. (Ex. E at 4; Ex. A at 9; Pet. Mem. at 5 n.4)

## I.   PROCEDURAL HISTORY

### A.   Plea Hearing

New York Supreme Court Justice Carol Berkman held a plea hearing on February 1, 2006. (Ex. B) Petitioner, represented by Daniel Parker, waived his right to indictment (Ex. A at 6), and pled guilty to first-degree robbery pursuant to a plea agreement.[1] (Ex. A at 11-13) The record of the plea makes clear that the parties agreed, and the court understood, that (1) Petitioner would be sentenced to "twelve and a half to twenty-five years concurrent with the time he is doing [on the 1990 case]"; and (2) the court would "impose a sentence nunc pro tunc on the new case . . . back ten and a half years. . . . [to] August 1st, 1995." (Ex. A at 9, 13, 16; Ex. D at 2; Ex. E at 2-3). During the plea hearing, the Assistant District Attorney ("ADA") explained that the "nunc pro tunc date" was calculated "to go back ten and one half years, so that Mr. Nickens

---

[1] In exchange for Petitioner's guilty plea, the People agreed to the dismissal of the murder charge at sentencing. (Ex. A at 8-9; Ex. B at 2-3)

will wind up doing two years at least on this case[.]"[2]  (Ex. A at 8)  Petitioner's attorney confirmed that this was his understanding of the plea agreement, stating that the sentence would run from "August 1st, 1995[,]" or approximately ten and one half years prior to the sentencing date.  (Ex. A at 9, 13)

### B. Sentencing Hearing

Petitioner appeared with counsel for sentencing on February 15, 2006.  (Ex. B)  The ADA reminded the court that the parties had agreed to a sentence of "[t]welve and a half to twenty-five[years,] nunc pro tunc ten and a half years."  (Ex. B at 2)  Defense counsel agreed, stating that Petitioner would "receive [prison time served] credit going back ten and a half years on this sentence.  And that . . . [Petitioner would] not be parole eligible for the next two years [after the sentencing date]."  (Ex. B at 3)  In pronouncing sentence, Justice Berkman stated:  "the defendant is sentenced to a term of twelve and a half to twenty-five [years].  That is nunc pro tunc to August 1, [1995], to run concurrently with [the sentences he is already serving]."  (Ex. B at 6)

### C. Re-Sentencing Hearing

Petitioner's case was re-opened at the People's request, and the parties appeared for resentencing before Justice Berkman on April 19, 2006.  (Ex. C)  The circumstances surrounding the People's request are confusing.  The ADA stated that he had received a letter from the State Division of Parole informing him that Petitioner was immediately parole eligible because the Parole Division deemed that Petitioner's February 15, 2006 sentence was fully

---

[2] Because the plea bargain provided that Petitioner's twelve-and-a-half to twenty-five year sentence would run from August 1, 1995, he would first become eligible for parole on this sentence in February 2008, two years later.

3

concurrent with the prison term imposed as part of Petitioner's October 19, 1990 sentence.[3]  In other words, the Parole Division – despite Justice Berkman's nunc pro tunc language – understood her to have directed that Petitioner's February 15, 2006 sentence should be treated as if it had begun to run on October 19, 1990, rather than August 1, 1995, as Justice Berkman had ordered.  (Ex. C at 2)  The ADA stated that because Justice Berkman had used the word "concurrent," "that made the sentence begin to run from the date that he originally went to prison," rather than August 1, 1995.  (Ex. C at 3)  The State Division of Parole found the court's "nunc pro tunc" language to be "meaningless."  (Ex. C at 6)  The ADA went on to say that, according to the Division of Parole, the court must "specify on the record that the time was to be concurrent with the time remaining on those two [unrelated] sentences" in order to effectuate the parties' intent for the sentence.  (Ex. C at 3; see also id. at 6)  Justice Berkman had, of course, provided that Petitioner's new sentence would be served concurrently with his prior sentences, with the new sentence beginning on August 1, 1995.  (Ex. B at 6)

At the April 19, 2006 re-sentencing, the prosecutor reiterated the parties' agreement and understanding that petitioner's sentence would be "nunc pro tunc 10-1/2 years and that [his] sentence [would] begin to run from August 1, 1995."  (Ex. C at 2)  Petitioner's attorney expressed agreement with the prosecutor's statements, and confirmed that "we agreed on behalf of Mr. Nickens that he would not be parole eligible for 2 years."  (Ex. C at 2-3)

Defense counsel commented that he thought "it was a silly thing" for the People to seek resentencing, because after the February 15, 2006 sentencing – "despite the best intentions of the parties, [Petitioner] went in front of the Parole Board, was denied parole, and his next scheduled parole hearing is December, 2007."  In light of the Parole Board's action,

---

[3]  The letter from the Parole Division is not part of the record before this Court.

defense counsel believed that the two years of ineligibility for parole had little continued practical effect: "So, now, I think this is silly, moot, and pointless, and think the parties' intention would be effectuated if you [the Judge] left the sentence as it were now." (Ex. C at 3-4)

Defense counsel thereafter expressed confusion about what "'concurrent with the time remaining' means," but reaffirmed his understanding that Petitioner would receive a twelve-and-a-half to twenty-five year sentence that would begin on August 1, 1995. The court then asked: "What is it I have to do with everybody's understanding of the promise and the sentence in the first place?" (Ex. C. at 5)  The ADA stated that the court had to say that "the sentence is to be concurrent with the time remaining . . . on the sentences [Nickens is] already serving." Defense counsel asked the court to make clear that the new sentence should run from August 1, 1995 and that Nickens need serve only two years on the new sentence before becoming eligible for parole – i.e., he would become eligible for parole on February 15, 2008.  (Ex. C. at 6-7).

Justice Berkman then went on to re-impose the same twelve-and-a-half to twenty-five year sentence nunc pro tunc to August 1, 1995 "[c]oncurrent with the time remaining on the [earlier cases]." In the "Remarks" section of her Commitment Order, Justice Berkman stated that it was the "parties' intent" that Petitioner would become parole eligible on February 15, 2008.  (Ex. C at 8-9)

### D. Petitioner's Direct Appeal

On appeal from the April 19, 2006 resentencing, Petitioner argued that:  (1) the trial court lacked authority under New York Criminal Procedure Law ("C.P.L.") § 430.10 or

5

otherwise to alter Petitioner's sentence to a greater effective term (Ex. D at 7, 8-12);[4] and (2) Petitioner was denied the effective assistance of trial counsel because his attorney failed to argue this issue before the trial court. (Ex. D at 13-15)

On December 18, 2007, the Appellate Division unanimously affirmed. People v. Nickens, 46 A.D.3d 363 (1st Dep't 2007). The court held that Petitioner "did not preserve his claim that the court improperly resentenced him[.]" Id. (citing People v. Samms, 95 N.Y.2d 52, 55-58 (2000)). The court likewise declined to review the resentencing in the interest of justice and, in dicta stated that had it reviewed the claim, it "would find that the court did not unlawfully alter defendant's sentence." Id. (citing C.P.L. § 430.10). Finally, court stated that it had "considered and rejected defendant's remaining arguments, including his ineffective assistance of counsel claim." Id.

On January 18, 2008, Petitioner sought leave to appeal to the New York Court of Appeals, requesting that court to "consider and review all issues outlined" in Petitioner's briefs below. (Ex. H at 1-2) In a follow-up letter dated February 11, 2008, Petitioner argued that the "resentencing proceeding abrogated [his] legitimate interest in the finality of his sentence." (Ex. H at 5) The People submitted a letter opposing Petitioner's application. (Ex. I) On February 29, 2008, the court denied Petitioner's application for leave to appeal. People v. Nickens, 10 N.Y.3d 769 (2008) (Ex. J).

---

[4] C.P.L. § 430.10 provides that: "Except as otherwise specifically authorized by law, when the court has imposed a sentence of imprisonment and such sentence is in accordance with law, such sentence may not be changed, suspended or interrupted once the term or period of the sentence has commenced." Courts, however, still "possess inherent power to correct their records, where the correction relates to mistakes, or errors, which may be termed clerical in their nature, or where it is made in order to conform the record to the truth." People v. Minaya, 54 N.Y.2d 360, 364 (1981) (internal citations and quotations omitted).

6

## **DISCUSSION**

In his habeas corpus petition, Nickens argues that the resentencing violated his rights under the Double Jeopardy Clause because (1) he received an increased sentence; and (2) he had a "legitimate expectation of finality" in the original sentence. (Pet. Br. 9) Nickens further contends that he received ineffective assistance of counsel because his lawyer failed to raise a double jeopardy argument at the resentencing.

With respect to prejudice, Nickens contends that at resentencing the court "imposed a greater effective term," "with the result that a smaller portion of his sentence now runs concurrently with the sentences imposed upon his prior convictions." (Pet. Br. 12, 20; see also Pet. Br. 24 ("By vacating [Nickens'] sentence and resentencing him, the trial court reduced the amount of time which ran concurrently by a number of years and effectively increased his sentence.")) While Nickens' claims are not entirely clear, he appears to be contending that at his first sentencing on February 15, 2006, Justice Berkman ordered that his new sentence would be deemed to have begun running on October 19, 1990 – when he began serving a sentence on unrelated crimes – and that at the resentencing on April 19, 2006, Justice Berkman ordered that the new sentence would be deemed to have begun running, nunc pro tunc, on August 1, 1995. As the discussion above should make clear, however, Justice Berkman clearly provided – at both sentencings – that while Nickens' new sentence would run concurrently with his previous sentences, his new sentence would be deemed to have begun running on August 1, 1995, and not on October 19, 1990.

This Court will first consider whether Nickens has exhausted his state remedies and then turn to the merits of Nickens' claims.

7

I. **STANDARD OF REVIEW AND EXHAUSTION OF STATE REMEDIES**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Clearly established Federal law means the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (internal quotation marks omitted) (quoting Williams v. Taylor, 529 U.S. 362, 402 (2000). A state court decision is "contrary to" such a holding only where the state court "either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'" Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001) (quoting Williams, 529 U.S. at 405). The inquiry for a federal habeas court is thus not whether the state court's application of the governing law was erroneous or incorrect, but rather "whether it was objectively unreasonable." See Williams, 529 U.S. at 366. Interpreting Williams, the Second Circuit has noted that even though "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal

8

quotation marks and citations omitted); see also Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

Relief under 28 U.S.C. § 2254 is available only where "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To have exhausted a claim, a petitioner must have "fairly . . . present[ed] the federal claim in state court" by "inform[ing] the state court of both the factual and the legal premises of the claim he asserts in federal court" prior to bringing his habeas petition. Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2003) (internal quotations and citations omitted). Under the AEDPA, a district court may, in its discretion, deny a habeas petition containing unexhausted claims on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). "[T]he question of whether a federal constitutional question was sufficiently asserted in state courts to form the basis of a federal habeas petition is ultimately a question of federal law which the federal courts must resolve for themselves." DiSimone v. Phillips, 461 F.3d 181, 189 (2d Cir. 2006).

Here, the State contends that Nickens failed to argue, either at the state trial or appellate level, that his resentencing on April 19, 2006 violated his rights under the Double Jeopardy Clause, and accordingly, that claim is procedurally barred. A "state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution," however. Those "ways" include

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

9

Diaz v. Conway, No. 04 Civ. 5062 (RMB)(HBP), 2008 WL 2461742, at *15 (S.D.N.Y. June 18, 2008) (citing Daye v. Attorney General of New York, 696 F.2d 186, 194 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984)); see also Stewart v. Scully, 925 F.2d 58, 62 (2d Cir. 1991).   Nickens' state appellate brief satisfies the latter three criteria.

Petitioner's state appellate brief relies on Kisloff v. Covington, 73 N.Y.2d 445, 449-53 (1989), where the Court of Appeals held that a trial court had exceeded its powers in vacating a judgment to remedy the parties' mutual mistake with regard to a plea bargain, because further prosecution would "abridge" the defendant's "fundamental constitutional right against double jeopardy."  At the outset of his brief, Petitioner also cites the Fourteenth Amendment to the Constitution.  (Pet. App. Div. Br. at i).  These citations are sufficient to demonstrate that Petitioner advanced a constitutional argument.  Furthermore, it "is well settled that the double jeopardy clause provides a measure of protection against sentence enhancement," Stewart, 925 F.2d at 62, and "increased punishment for an offense upon resentencing is clearly a scenario within the mainstream of double jeopardy litigation."  Id.

Moreover, this Court may assume – contrary to the State's preservation argument (Resp. Br. at 19-20) – that the state appellate courts were aware that they could consider Petitioner's constitutional double jeopardy claims whether or not trial counsel had raised a double jeopardy claim at the resentencing.  Under New York law, such claims need not be preserved and may be raised for the first time on appeal.  See People v. Michaels, 48 N.Y.2d 1, 6-7 (1979) ("[T]here exist certain rules of law, be they founded on the common law, prescribed by statute, or mandated by our Constitutions, which are so basic to the validity of a criminal proceeding that the failure to observe such a rule may be raised at any time during the appellate process. . . . [W]e must [] determine whether a claim that the constitutional prohibitions against

10

double jeopardy have been violated poses a question of law reviewable in this court despite the failure to raise that defense before the trial court. We conclude that it does, for double jeopardy implicates the very power of the State to prosecute a particular defendant for a particular crime and serves as an important check on the potential power of the State to intimidate its citizenry. The constitutional prohibition against double jeopardy is fundamental not only to the process of criminal justice, but to our system of government itself.").

A review of the Appellate Division opinion indicates that that court disposed of Petitioner's C.P.L. claim on procedural grounds, but rejected his remaining claims on the merits. In the portion of the opinion discussing Nickens' failure to "preserve his claim that the trial court improperly resentenced him," the Appellate Division referred to "claim" in the singular and cited C.P.L. § 430.10. People v. Nickens, 46 A.D.3d 363, 363 (1st Dep't 2007) ("were we to regard this claim we would find that the court did not unlawfully alter defendant's sentence (see C.P.L. § 430.10)"). The court's language indicates that a single claim was barred on procedural grounds, and that this claim was the state statutory claim. The Appellate Division went on to "consider[] and reject[] defendant's remaining arguments, including his ineffective assistance of counsel claim." Id. (emphasis added). In sum, there is no evidence that the Appellate Division disposed of Petitioner's double jeopardy claim on procedural grounds.

Absent a clear indication that the final state court judgment in a case relied on a procedural bar, "there is no basis for a federal habeas court's refusing to consider the merits of a federal claim." Harris v. Reed, 489 U.S. 255, 265 n.12 (1989). To bar habeas review, a state court decision must "clearly and expressly rely" on a state procedural ground, see Coleman v. Thompson, 501 U.S. 722, 735 (1991) (emphasis added), and the rule applied by the state court in applying a procedural bar must be "firmly established and regularly followed" at the time it is

applied. Ford v. Georgia, 498 U.S. 411, 412 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348-51 (1984)). Given that the Appellate Division invoked a state procedural bar only as to Nickens' state statutory claim, there is no clear procedural bar to habeas review of Petitioner's double jeopardy claims. See Harris, 489 U.S. at 266 (finding no default because the state court decision "falls short of an explicit reliance on state-law ground").

## II. PETITIONER'S RESENTENCING DID NOT VIOLATE THE DOUBLE JEOPARDY CLAUSE

The Double Jeopardy Clause protects "against multiple punishments for the same offense." U.S. Const. amend. V. However, "the mere pronouncement of sentence is not accorded the degree of finality accompanying a verdict of acquittal," Stewart v. Scully, 925 F.2d 58, 63 (2d Cir. 1991), and the "double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence." United States v. DiFrancesco, 449 U.S. 117, 136 (1980). The predicate for a double jeopardy claim in the context of a resentencing is a longer or otherwise less favorable second sentence. "The Double Jeopardy Clause generally prohibits courts from enhancing a defendant's sentence once the defendant has developed a 'legitimate expectation of finality in the original sentence.'" United States v. Bryce, 287 F.3d 249, 254 (2d Cir. 2002) (quoting United States v. Triestman, 178 F.3d 624, 630 (2d Cir.1999)); see also United States v. Benz, 282 U.S. 304, 307 (1931) ("to increase the penalty is to subject the defendant to double punishment for the same offense"). Thus, if "any finality applie[s] to the pronouncement of a sentence," the original sentence would serve "as a ceiling" on another imposed later. DiFrancesco, 449 U.S. at 136.

Here, Justice Berkman's resentencing of Nickens did not in any manner lengthen or otherwise enhance his original sentence, nor did it affect Nickens' expectation in the finality of the sentence originally imposed. Instead, the record reflects the parties' and the court's

consistent understanding and intent from the guilty plea, to the sentencing, through the resentencing that Nickens would be sentenced to twelve-and-a-half to twenty-five years' imprisonment, to run concurrently with his previous sentences, but to commence – not on the date of his sentencing on the unrelated crimes (October 19, 1990) – but instead on August 1, 1995.  At both the sentencing and the resentencing – consistent with the parties' explanation of their plea bargain – Justice Berkman clearly stated that Nickens' sentence would run "nunc pro tunc" from August 1, 1995.

While the parties' intent in entering into their plea bargain is not critical, here it was spread on the record at the guilty plea, at sentencing, and at the resentencing.  The purpose of the nunc pro tunc provision – as the ADA repeatedly stated and as defense counsel repeatedly acknowledged – was to ensure that the minimum portion of Nickens' indeterminate sentence (twelve-and-a-half years) would not expire before February 15, 2008 – i.e., he would not become parole eligible until two years after the February 2006 sentence.

For reasons that are unclear in the record, the State Division of Parole refused to honor Justice Berkman's original sentence, insisting that she state that Nickens' sentence was to run "[c]oncurrent with the time remaining on the [earlier cases]" and declaring that her use of the term "nunc pro tunc" was "meaningless."  (Ex. C at 3; Ex. C at 6)  At resentencing, however, Justice Berkman repeated – largely in haec verba – the original sentence she had imposed in February 2006.  The state court re-imposed the same twelve-and-a-half to twenty-five year sentence nunc pro tunc to August 1, 1995, and stated that this sentence would run "[c]oncurrent with the time remaining on the [earlier cases]."  (Ex. C at 3)

Petitioner's argument that Justice Berkman "imposed a greater effective term" at resentencing, "with the result that a smaller portion of [Nickens'] sentence now runs

13

concurrently with the sentences imposed upon his prior convictions" (Pet. Br. 12, 20), is based on the fallacy that the state court's original sentence provided that Nickens' new sentence would be fully concurrent with his 1990 sentence. In her original sentence, Justice Berkman stated that Nickens was "sentenced to a term of twelve and half to twenty-five [years]. That is <u>nunc pro tunc</u> to August 1, [1995], to run concurrently with [the sentences he is already serving]." (Ex. B at 6) The only rational interpretation of Justice Berkman's language is that Nickens' sentence will run from August 1, 1995, and will run concurrently with the sentences that he was then serving. While the Division of Parole appears to have had difficulty in interpreting the court's "<u>nunc pro tunc</u>" language, this Court cannot find a double jeopardy violation where the resentencing in fact imposed no new terms and did not constitute a lengthening or other enhancement of the original sentence.[5]

### III.   PETITIONER DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that his trial counsel was ineffective in failing to challenge – on double jeopardy grounds – the trial court's authority to resentence him at the April 19, 2006 proceedings. (Am. Pet. at 8) Ineffective assistance of counsel claims "are squarely governed by [the Supreme Court's] holding in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)." <u>Williams</u>, 529 U.S. at 390; <u>accord</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001). In order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>LanFranco v. Murray</u>, 313 F.3d 112, 118 (2d Cir. 2002). First, petitioner must establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Second, a habeas petitioner

---

[5] Petitioner has never contended that Justice Berkman's comment in the "Remarks" section of her Commitment Order – that it was the "parties' intent" that Petitioner would become parole eligible on February 15, 2008 (Ex. C at 8-9) – itself constitutes a double jeopardy violation.

14

must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Id. at 694.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  Id. at 700.

As discussed above, Petitioner's double jeopardy claim has no merit, because his sentence was not lengthened or otherwise enhanced at the resentencing.  "Failure to make a meritless argument does not amount to ineffective assistance."  United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000).  Moreover, the Appellate Division explicitly stated that "the [trial] court did not unlawfully alter [petitioner's] sentence." Accordingly, if trial counsel had raised a double jeopardy argument, his objection would have been properly rejected.  Peoples v. Nickens, 46 A.D.3d at 363.

Even if this Court were to find that Petitioner's double jeopardy claim had merit, it would still not find that trial counsel's performance was constitutionally deficient.  Nickens' counsel negotiated a highly favorable plea, which involved dismissal of a pending murder charge and a sentence on a robbery that had little practical consequences.  The sentence on the robbery case ran concurrently with the sentences Nickens was already serving.  While Nickens gave up his right to seek a parole hearing on this sentence for two years, he – contrary to the parties and the court's intent – nevertheless received a parole hearing shortly after the original sentence and was denied parole.  Throughout the guilty plea and sentencing proceedings, defense counsel repeatedly took steps to insure that Nickens would receive ten-and-a-half years credit on his 2006 sentence, when all of that time had been served in connection with unrelated crimes Nickens had committed in 1990.  In sum, defense counsel negotiated a highly favorable disposition for Nickens and protected his interests throughout all of the proceedings.

15

## CONCLUSION

For the reasons stated above, Nickens' petition for a writ of habeas corpus is DENIED. Because Nickens has not made a substantial showing that he suffered the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997). Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.

The Clerk of the Court is directed to close this case.

Dated: New York, New York
July 21, 2010

SO ORDERED

*[signature]*
Paul G. Gardephe
United States District Judge